## LATACHIA A. LOCKE *vs.* GEORGE JOHNSON & others.

An action may be maintained on a bond given under order of the police court of the city of Boston, by one who is held to answer on a complaint under the bastardy act, with condition to appear and answer at " the superior court of the county of Suffolk " to be holden at said Boston at a day named, although in fact " the superior court of the county of Suffolk " had before the date of the bond been abolished, if its whole jurisdiction had been transferred to "the superior court," of which a legal term was to be held in said Boston for the county of Suffolk on the same day when the respondent was to appear and answer, and which was the only court having jurisdiction of the case.

Since the General Statutes went into effect, the sureties in a bond given by one who has been held to answer to a complaint under the bastardy act cannot exonerate themselves from liability by surrendering their principal in court during the pendency of an action against them on the bond, although it was given before the General Statutes went into effect.

CONTRACT on a bond taken under the bastardy act, with condition for the further appearance of Charles R. Swift, who had been held to answer on a charge of being the father of a bastard child, with which the plaintiff was pregnant. At the trial in the superior court, upon agreed facts which are stated in the opinion, judgment was rendered for the defendants, and the plaintiff appealed to this court.

*W. L. Burt,* for the plaintiff.

*F. W. Hurd,* for the defendants.

DEWEY, J. It is objected to the validity of this bond that it was unauthorized by law, inasmuch as there was no such court in existence at the time of giving the bond, as that at which the principal became bound to appear and answer to the complaint of Latachia A. Locke. This is supposed to result from *St.* 1859, *c.* 196, establishing " the superior court," which act took effect prior to the giving of this bond. Prior to that statute, there existed, by virtue of *St.* 1855, *c.* 449, a court known as " the superior court of the county of Suffolk," the duties of which were by *St.* 1859, *c.* 196, devolved upon " the superior court," established by that act. It is to be taken as a conceded fact, that the former superior court of the county of Suffolk was not in existence, and the party could not properly be required to give a bond to appear before the justices of that court. The

question resolves itself into this : May not this bond be properly construed as requiring the principal to appear at the superior court to be holden at Boston on the first Tuesday of October then next ? We are to take into consideration the facts that this court had exclusive jurisdiction of the complaint to which he was to answer, that it had succeeded to all the jurisdiction of the former court, that it was the only court having the title of superior court, and that it had by law its fixed and regular term on the first Tuesday of October. We are further to bear in mind that the bond itself describes the court as the superior court, and as " the superior court to be holden at Boston on the first Tuesday of October next." The only error in the description, that is the subject of any exception, is in the use of the word " of " instead of " for." The party is required by the bond to appear at " the superior court of the county of Suffolk," when the proper recital would have been to appear at the superior court for the county of Suffolk, or perhaps better stated, to appear at the superior court to be holden at Boston, within and for the county of Suffolk.

We cannot suppose that there was any uncertainty in the minds of the parties who became obligors in this bond, as to the court at which the principal was to appear and answer to the complaint of Latachia A. Locke. The complaint was there entered and the principal there appeared, and took no objection to the jurisdiction of the court, but filed an affidavit of defence, and the case was thereupon continued to the next succeeding term of that court.

While the general principle has been fully recognized by the judicial tribunals, that a bond to appear before a court not in existence would be invalid, it will also be found that regard is to be had to the fact whether a misnomer was under the circumstances a material one, and does require the party to appear before any other than the proper court. Thus, in *People* v. *Hawkins*, 3 Code Reporter, 42, which was also a case of a bond to appear and answer to a complaint in a charge of bastardy, in the bond and order of the court, the court to which the party was to appear was described as " the court of general sessions

of the peace," when the proper description of the court was the "court of sessions." It was there insisted that there was no such court in existence, and the party was not in default for not appearing before the existing court, known as "the court of sessions." The court held the misnomer immaterial, and that any unnecessary addition to the title of the court may be rejected as surplusage, and a misdescription which does not mislead may be disregarded.

In deciding upon objections of the character raised in the case before us, the fact that the court in existence, and to which the proceedings were required to be returned and entered, and the party to appear and answer, was a court substituted for and taking the jurisdiction of the case in like manner as the court described in the bond, has been considered as obviating in some degree the objection of misnomer. In *Teall* v. *Van Wyck*, 10 Barb. 376, which was the case of a bond to enter and prosecute an appeal before the "Albany Common Pleas," when in fact the court then existing, which had been by law substituted for that named in the bond, was known and described as the "Albany County Court," it was held reasonable and proper to treat this as a bond to appear before the "Albany County Court."

In our own court, in the case of *Arnold* v. *Allen*, 8 Mass. 147, where the condition of a bond was to prosecute the action "at the county court next to be holden at Dedham," and the only court to be holden at Dedham having jurisdiction of the case was the court of common pleas of said county, there holden for said county, upon an objection to the bond for such misnomer of the court, it was held by the court that this objection could not prevail. It was said, "It would be yielding too much to technical nicety. The words 'county court' must intend the court of common pleas."

Looking at all the facts in the present case, the court are of opinion that the defence taken to the validity of the bond is not well sustained.

2. The further inquiry is, whether the sureties in this bond had a right, while the present action against them was pending in the superior court, to be discharged therefrom, upon surrendering

the principal in open court, and paying the costs of this suit. No such right existed under Rev. Sts. *c.* 49, the right of surrender by the sureties in the bond being a right to be exercised during the pendency of the original prosecution only. Such was ever the law on this subject previously to *St.* 1856, *c.* 34, in which it was enacted that the sureties in such bond " shall have the same power to exonerate themselves as sureties in a bail bond now have by Rev. Sts. *c.* 91." This statute was in direct terms repealed by the Gen. Sts. *c.* 182, which took effect on the 1st of June 1860. That the provisions of *St.* 1856, *c.* 34, were designedly omitted in the General Statutes is made apparent by the fact that a section was introduced into Gen. Sts. *c.* 72, by the commissioners in their report, embodying that precise provision, but the same was not adopted by the legislature. It is conceded that the existing laws, as applicable to future cases, would not authorize any such surrender of the principal after the forfeiture of the bond and the commencement of an action thereon.

But it is contended that, in reference to such bonds as were the subjects of a suit prior to the time when the General Statutes took effect, *St.* 1856, *c.* 34, is yet operative. First, because it is embraced in the saving clause of the Gen. Sts. *c.* 181, § 4; or secondly, because the right to surrender as given by *St.* 1856, *c.* 34, was a vested right, which the legislature could not constitutionally take away.

These objections to the alleged repeal of *St.* 1856, *c.* 34, may properly be considered together. By Gen. Sts. *c.* 181, § 4, which is the supposed saving clause as to the statutes repealed, it is enacted that such repeal shall not affect any right accruing, accrued or established before the repeal takes effect. The further clause is, that such repeal shall not affect any suit or proceeding had or commenced in a civil case before the repeal takes effect, but the proceedings shall, when necessary, conform to the provisions of the General Statutes.

We are then to inquire whether the enlarged right to surrender the principal in a bond given for his appearance at the next term of the court, and to abide the order of court thereon, in

proceedings under the act for the maintenance of bastard children, at any time before judgment in the suit on the bond, as given by *St.* 1856, *c.* 34, is a vested right? If so, then it was saved by the saving clause first stated. This question would seem to turn upon the point whether this provision as to the right to surrender was really a part of the contract recited in the bond, and to have the like effect as if it had been inserted therein, as a part of the condition, or is a mere incidental matter of relief from the liability of a breach of a valid contract, resulting from general legislation on the subject, which may vary from time to time. It is quite obvious that as strong an objection might have been made against *St.* 1856, *c.* 34, enlarging the relief. The obligees of all bonds that had been given might as properly urge that their rights had been affected; that under the bond which they had taken the principal must be surrendered on the process against him, or the bond was forfeited. We are not aware that any question of that kind was ever raised.

The better and more proper view of the matter is, in our opinion, that this right to surrender the principal during the pendency of a suit upon the bond is no part of the contract embraced in the bond, which contained the single stipulation that the condition of the obligation is such that if the principal " shall appear at the said superior court, and answer to the said complaint, and abide the order of court thereon, then this bond shall be void : otherwise it shall remain in full force and virtue." Upon the failure to do this, the condition of the bond is broken, and the liability attaches. Existing laws may be resorted to, if any such there are that can be invoked to his relief. But any such changes in the general laws, making the time for a surrender of the principal less than it was, but not less than the stipulation of the bond, are not in violation of vested rights.

Any supposed hardship in this particular case is at once answered by the full opportunity that the defendants had to avail themselves of the right to surrender, under this course of legislation. The breach of this bond occurred on the 14th of March 1860. The statute repealing the law of 1856 was enacted on the 28th of December 1859, to take effect on the first day of

June 1860. The obligees in the bond had therefore, in addition to their opportunity to discharge the condition of the same by securing the attendance of the principal at the court in March 1860, the further opportunity of surrendering him at any time before the 1st of June. The obligors also knew that the right to make such surrender would cease on the 1st of June, by force of the legislation in December 1859.

It is further objected that there is a provision in the saving clause of Gen. Sts. *c.* 181, § 4, that such repeal shall not affect any suit or proceeding had or commenced in a civil case, but the proceedings shall when necessary conform to the provisions of the General Statute. This suit was brought twelve days before the repeal took effect, and was therefore a suit to which the clause was applicable, if the matter now presented as a defence to the suit is saved by this clause. But it seems to us that this provision was of a different character, and was rather intended to avoid the defeating of actions pending, through any change of pleadings, or in the mode of trial as changed by the General Statutes, and therefore cannot avail the defendants.

*Judgment for the plaintiff for the penalty of the bond*